Warren FRAZEE, Appellant,

v.

Howard PARTNEY, Respondent.

Richard FRAZEE, Linda Frazee, Donna Jean Frazee, and Gary Frazee, Minors, by Warren Frazee, Next Friend, Appellants,

v.

Howard PARTNEY, Respondent.

Nos. 46389, 46390.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

916

Robert L. Carr, Potosi, for appellants.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

EAGER, Judge.

Two actions for wrongful death have been argued and submitted together on one set of briefs, but with separate, though largely identical, transcripts. In the first Warren Frazee sues for the death of a minor child, and in the second four minor children sue for the death of their mother in the same accident. The injuries and deaths occurred on October 10, 1954, and the suits were not filed until September 21, 1956. We shall refer to all appellants as plaintiffs and to the respondent as defendant. The petition in each case alleged that the defendant "fraudulently, intentionally, deliberately, wilfully, maliciously, and of his spite absented himself and concealed his identity from the plaintiffs and all other persons from and after the 10th day of October, 1954, until the 23rd day of March, 1956. This action is commenced within one year after the accrual of the cause of action herein stated."

Defendant pleaded in each case the one-year bar of § 537.100 RSMo 1949, V.A.M.S.

(to which all statutory citations will refer unless otherwise stated); and the defendant, by motion, requested a separate hearing on this issue of limitations. This request was granted and such a hearing was held by the court, a jury being waived; evidence was heard, and it was agreed that the evidence should be applicable to both cases. At the conclusion of this hearing the court found the issues for the defendant upon the stated ground that the plaintiffs' causes of action were barred by § 537.100, and it thereupon entered judgments for the defendant. Motions for new trial were duly filed and overruled; these adequately preserved the points here considered.

The evidence of plaintiff Warren Frazee was in substance as follows: On Sunday, October 10, 1954, at a little after 1:00 p. m., he was driving west on Missouri Highway No. 8, about 10 miles west of Potosi in Washington County; he was driving a 1953 Chevrolet, and his wife and five children were with him; the weather was good. As Frazee approached a curve a green pickup truck, traveling east, came around the curve and "swerved directly over on my side of the road * * * directly in my path"; to avoid a head-on collision Frazee, applying his brakes, swerved to the right, but when he did so he caused his car to go down an embankment and it turned over several times; Mrs. Frazee died almost immediately, and Karen Frazee, one of the children, died in a hospital later the same day; there was no contact between the cars. Mr. Frazee testified that the horn of his car was blowing after the accident until someone shut it off, and that his older children were screaming, but that no one came back to the scene from the pickup, and that he first learned the identity of its driver in March, 1956, from the Highway Patrol. The testimony of two members of the Highway Patrol, considered jointly, indicated the following: That in the investigation of this accident the defendant was located and interviewed at Potosi in March, 1956; that he admitted driving a green pickup truck at the time and place in question, and that he

went to the scene of the accident with them and showed "where it occurred"; that, in fact, he was able to tell them of the location shortly before they actually reached the place; that defendant stated that at the time he was drowsy and had dozed off, when suddenly his wife (sitting beside him) grabbed him or the wheel and shouted "look out"; as he opened his eyes he saw a car "whiz by" on his left and he was then headed toward the right-hand ditch; he looked in the rear vision mirror but never saw the other car any more; that he did not stop until he got to the top of a hill, where he got out and looked back but didn't "see anyone"; that about a mile further on, he drove off on a side road and stopped for perhaps 15 minutes; there they discussed the fact that there might have been an accident, but then proceeded on to St. Louis. There was further evidence from the sheriff of the county that no one except Warren Frazee and the Highway Patrol had reported the accident, either to him or to the nearest police station.

Counsel for plaintiffs makes two points: (1) that the causes of action did not accrue until suits could be validly commenced and maintained against an "actual" defendant; and (2), that defendant's criminal violation of § 564.450 (requiring reports of accidents) prevented plaintiffs from filing their suits earlier and excused their delay. Construing the petitions somewhat broadly, we hold that these points are within the pleadings. We shall, however, consider the substance of these points in the following manner and order: A. Did defendant's acts operate to toll or extend the one year bar of § 537.100 (which is the substance of plaintiffs' Point 2)? B. When did the causes of action accrue? In so doing we shall accept as true, for our present purposes, the substance of the evidence as related above. The trial court made no findings of fact as such, and we may consider the evidence here anew under § 510.-310.

Sections 537.070 to 537.100, inclusive, being part of Ch. 537 on "Torts and Actions

for Damages," constitute our wrongful death act. The applicable part of § 537.100 is as follows: "Every action * * * shall be commenced within one year after the cause of action shall accrue * * *". These identical words were contained in the original section enacted in 1855. In 1905 a proviso was added extending the benefits of the general "nonsuit" section to the death act (Mo.Laws 1905, pp. 137–138). Under the prior law it was held (see Clark v. Kansas City, St. L. & C. R. Co., 219 Mo. 524, 118 S.W. 40) that the general saving clause in case of nonsuit did not apply to suits under the death act, which carried "its own special statute of limitations, which must control." And see Gerren v. Hannibal & St. Joseph R. Co., 60 Mo. 405. In 1909 the tolling provision of the general statutes applicable in case of absence from the state (now § 516.200) was added to the death act, in a somewhat broader form than the general statutory section. (Laws 1909, pp. 463–464.) This was undoubtedly done for the same reason; namely, that the general tolling provisions or exceptions did not apply to this special act which carried its own limitations. At this point we should also note the provisions of § 516.300, as follows: "The provisions of sections 516.010 to 516.370 · shall not extend to any action which is or shall be otherwise limited by any statute; but such action shall be brought within the time limited by such statute." The sections therein referred to are, of course, the provisions of the general statutes of limitations.

■ Our death act creates a new and different cause of action not known to the common law. Cummins v. Kansas City Public Service Co., Banc, 334 Mo. 672, 66 S.W.2d 920. There has been considerable discussion in our cases as to whether the one-year limitation therein is a condition imposed upon the right itself, so that the very right ceases to exist after one year, or whether it is merely a statute of limitation. For the former view see: Barker v. Hannibal & St. Joseph R. Co., 91 Mo. 86, 14 S.W. 280; Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644; Packard v. Hannibal & St. Joseph R. Co., 181 Mo. 421, 80 S.W. 951; Chandler v. Chicago & A. R. Co., 251 Mo. 592, 158 S.W. 35, and see, generally, for this view 25 C.J.S. Death § 53b, pp. 1158–1159. The contrary view appears to have been taken in Cytron v. St. Louis Transit Co., Banc, 205 Mo. 692, 104 S.W. 109, and in Wentz v. Price Candy Co., 352 Mo. 1, 175 S.W.2d 852. In the Cytron case the question actually involved was whether (after one year) the court should have permitted the filing of an amended petition which sought to add the mother as a plaintiff in a suit instituted by the father alone, for the death of a minor; it was held that the proposed amendment did not change the cause of action and that such was permissible even after the limitation had expired. In the Wentz case the court was primarily concerned only with the limitation section of the Workmen's Compensation Act (now, in substance, § 287.430), considerably different in wording and meaning from that of the death statute. (On this see the discussion in State ex rel. Bier v. Bigger, quoted hereinafter.) However, the court discussed the death act by way of analogy, and its statements appear to be broad enough to constitute, by decision or dicta, a determination that the limitations of both acts are merely limitations upon the remedy, or statutes of "limitation and repose." The sole question involved there was whether an amendment extending the period for filing claims from six months to one year was applicable to an accrued claim, and such was held proper in the case of a pure statute of limitation, affecting the remedy only. The Baysinger case, supra, 199 S.W.2d 644, took the contrary view without discussing the Wentz case, and, so far as we have found, it is the last direct word of this court on the subject. We have determined that in this case we need not attempt to rescue that particular phase of the law from the morass into which it seems to have fallen; perhaps, for practical purposes, the distinction is more academic than real.

If we consider the one year provision of § 537.100 as a statute of limitation affecting only the remedy, it is nevertheless a special statute of limitation. And it seems also to come within the precise terms of § 516.300 which excludes from the operation of the general statutes any action which is "otherwise limited by any statute * * *." The significance of this is that the tolling provisions and exceptions of the general statutes are inapplicable, such as § 516.280 providing an extension of time when one absconds or conceals himself or by other improper act prevents the commencement of an action. A special statute of limitations must carry its own exceptions and we may not engraft others upon it. State ex rel. Bier v. Bigger, Banc, 352 Mo. 502, 178 S.W.2d 347, loc.cit. 350, 351; our court there said: "* * * In cases involving limitations under articles 8 and 9 of chapter 6 this court has often held that fraud or other improper conduct had the effect of tolling the statute. The same result has been reached in cases under special statutes of limitation which expressly provide for extending the time for certain reasons. All the Missouri cases cited by relator on this point fall within one or the other of these two lines of decisions. * * * Wentz v. Price Candy Co., 352 Mo. 1, 175 S.W.2d 852, is not in point on the question now being considered. In that case we held that the extension of the period of limitation by amendment of a statute would extend an existing cause of action which had not expired at the time of amendment. Relator quotes from our opinion in that case where we said that limitation laws recognize instances of excusable delay. We were speaking of a statute which is expressly made subject to our general statute of limitations, which includes Section 1031, supra.

"This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself." Then continuing, and quoting in part from another case, the court said: "'No other exceptions whatever are engrafted on that statute, and it is not the duty or the right of the courts to write new provisions into the statute. The infancy of plaintiff does not change the law. The express provision in his behalf of five years excludes all other exceptions. Moreover, it is a special statute of limitations upon the sole topic of wills and their contest, and it must be held to be exclusive of other statutes of limitation.' See, also, State ex rel. [State Life Ins. Co.] v. Faucett, Mo.Sup., 163 S.W.2d 592 and cases cited.

"Section 532 is a special statute limiting the time for probating wills and it does not expressly or impliedly authorize the time to be extended for any reason.

"The purpose of such statutes is expressed in one of the earliest of them, 21 James I, chap. 16, 'For the quieting of men's estates and the avoiding of suits.' In particular cases, this inflexible limitation may seem harsh. If so, the remedy is legislative, not judicial."

See, also: Blaser v. Osage River Gravel Co., Mo., 219 S.W. 585 (calling attention to our statute which is now § 516.300); Dryer v. Chicago & A. R. Co., 170 Mo.App. 550, 157 S.W. 129; City of Macon ex rel. Little v. Sparrow, 197 Mo.App. 654, 198 S.W. 1136; Haver v. Bassett, Mo.App., 287 S.W.2d 342 (holding the general tolling statute for absence not applicable to the death act); Kober v. Kober, 324 Mo. 379, 23 S.W.2d 149. The Kober case was a suit by a widow to set aside certain deeds on account of the fraud of her husband, and to establish her dower rights. The court held that the limitation of two years, specially fixed by § 1308 RSMo 1919 (applicable to actions by married women to recover real estate) was controlling, and said, 23 S.W. 2d loc. cit. 152: "Nor does the failure to discover the fraud, or acts of defendants in concealing the fraud, toll the running of the statute. No such exceptions are written into the statute, and we are not at liberty to

insert them. Parish v. Casner, Mo.Sup., 282 S.W. 392, 409; Turnmire v. Claybrook, Mo.Sup., 204 S.W. 178, 179."

A very full annotation on the subject of the tolling or suspension of the limitation periods of death statutes appears in 132 A. L.R. at pages 292–334. It will be impossible to discuss that here, but, as we construe it, it furnishes substantial authority for our conclusions. Plaintiffs cite a note in 10 A. L.R.2d at page 564. The author suggests, citing three cases, that the failure of a motorist to report an accident as required by statute may constitute a concealment within the meaning of an *applicable* tolling provision. He does not pretend to state that, under the authorities, such a failure would operate independently to toll the limitation of a death statute which does not carry any applicable exception for concealment.

In the final analysis we are seeking here to determine the legislative intent. We must consider not only the fact that our legislature has, in twice adding specific exceptions to the time limitation of our death act, failed to enact any exception which would extend the time by reason of such conduct as is shown here, but also the fact that § 516.300, which has at all times remained in force, specifically provides that the general statutes of limitations shall not extend "to any action * * * otherwise limited by any statute." We must further consider the various judicial constructions of these statutes, which have entered into and become part of them. We must and do hold that the limitation of one year specifically provided in § 537.100 was not tolled or the period extended by the defendant's conduct, even attributing to it the full effect of plaintiffs' contentions.

The remaining point is that these causes of action did not accrue until plaintiffs learned the identity of defendant so that they might institute and maintain effective suits against an actual defendant. It may be stated as a general principle that, unless affected by statute, a cause of action "accrues at the moment of a wrong, default or delict by the defendant and the injury of the plaintiff * * * if the injury, however slight, is complete at the time of the act." 1 Am.Jur., Actions, § 61, pp. 451–452. In Hunter v. Hunter, Mo., 237 S.W.2d 100, 103, this court said: "A cause of action accrues, and limitations thereon begin to run, when the right to sue arises." In Coleman v. Kansas City, Banc, 353 Mo. 150, 182 S.W.2d 74, at loc. cit. 78, the court said: " 'It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time.' 34 Am.Jur., page 92, sec. 113." In Unexcelled Chemical Corp. v. United States, 345 U.S. 59, loc. cit. 65, 73 S.Ct. 580, 583, 97 L.Ed. 821, the court said: "A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling." Counsel for plaintiffs cite the case of Brinkmann v. Common School Dist. No. 27, Mo.App., 238 S.W.2d 1, 5, which quotes a headnote from 1 C.J.S. Actions § 124a as follows: " 'A cause of action accrues at the time when its owner may legally invoke the aid of a proper tribunal to enforce his demand; when he has a present right to institute and maintain an action or suit.' " That text further states (citing cases) that a cause of action accrues "at the moment when the party owning it has a legal right to sue thereon." There are apparently some authorities which require also the *existence* of a party capable of suing and of a suable party against whom the demand may be enforced. Tobias v. Richardson, 26 Ohio Cir.Ct.Rep. 81, 85. But therein the term *existence* must be distinguished from a *discovery* of identity. Such decisions are usually based upon a delay in the appointment of an administrator who would be a necessary party plaintiff or defendant. 34 Am.Jur., Limitation of Actions, § 114, pp. 93–94. And the contrary has very frequently been held, even as to delay in the appointment of an administrator. Bickford v. Furber, 271 Mass. 94, 170 N.E. 796, 70 A.L.R. 469 (a death act case);

Reading Co. v. Koons, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (death case under F.E. L.A.). In the note appearing at 174 A.L.R. at page 816 et seq., it is indicated that the doctrine that in death cases the limitation only begins to run from the appointment of an administrator has been very generally repudiated, and that the period is generally held to begin at the death (loc. cit. 823). We are not concerned here with any question of the *existence* of either a cause of action, or of parties plaintiff, or of a party defendant; this case presents merely an inability to discover the identity of the defendant. We do not think that the authorities discussed sustain a holding of delayed accrual of the present causes of action.

Plaintiffs argue, with some citation of authority, that there can be no valid commencement of an action by a suit in which no valid summons can be issued. Even so, that does not reach our controlling point. We are construing the positive terms of a statute which starts the limitation in motion from the *"accrual"* of the cause of action, not from the time when one may be effectively commenced. Such a situation has been remedied in the general statutes by § 516.280 (prevention of the *commencement* of an action by concealment, absconding or by other improper act), but it is inapplicable here.

To be somewhat more specific, our courts have held in several cases that the cause of action for wrongful death accrues at the death. Kennedy v. Burrier, 36 Mo. 128, 130; Goldschmidt v. Pevely Dairy Co., 341 Mo. 982, 111 S.W.2d 1, 5; Glasgow v. City of St. Joseph, 353 Mo. 740, 184 S.W.2d 412, 415; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, 929; Fair v. Agur, 345 Mo. 394, 133 S.W.2d 402, 404. In the Kennedy case, which has often been cited, the court said, at loc. cit. 130: "The sixth section of the act provides that suit must be brought 'within one year from the time the cause of action accrued.' When, then, did the cause of action accrue?

We think the cause of action accrued whenever the defendant's liability became perfect and complete. Whenever the defendant had done an act which made him liable in damages, and there was a person *in esse* to whom the damages ought to be paid and who might sue for and recover the same, then clearly the cause of action had accrued as against him. When, then, did this liability take place? Evidently at the death of Kennedy. * * *" It is true that in those cases the courts were discussing the question under facts widely different from ours. But we do not feel justified in departing from the general principle announced in the absence of supporting authority.

Section 516.100, of the general statutes of limitations, provides in substance that a cause of action shall not be deemed to accrue when the breach of duty occurs but when the damage therefrom is sustained and capable of ascertainment. By its very terms it could be of no benefit to plaintiffs here, for their damages were immediately ascertainable. And, for the reasons discussed heretofore, it could not in any event apply to a death action which is "otherwise limited." Section 516.300.

The legislature has not seen fit to enact for death actions either a tolling provision or a delayed accrual on account of fraud, concealment, or other improper act (as § 516.280), notwithstanding the prior constructions which we have discussed. Undoubtedly a hardship has resulted here, and this decision has not been easy. We are forced to construe the cold, clear words of the statute, and if its scope is to be enlarged we feel that the remedy is legislative, not judicial. We deem it unnecessary to discuss what would have been the effect of a "John Doe" suit against a fictitious defendant, as argued pro and con, for no such suit was in fact filed. The judgment of the trial court will be affirmed. It is so ordered.

All concur.