**Paul D. HOWELL, et al., Appellants,**

v.

**Frank MURPHY, Trustee, & Robert A. Berdella, Jr., Respondents.**

**No. WD 45,386.**

Missouri Court of Appeals, Western District.

Oct. 20, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1992.

Application to Transfer Denied Jan. 26, 1993.

William R. Merryman, Kansas City, for appellants.

Randall W. Cain, Lee's Summit, for respondents.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

This is a wrongful death action against Robert A. Berdella, Jr., for the deaths of three of four individuals he held captive and tortured to their deaths. Berdella pleaded guilty to first degree murder in connection with the death of Robert Allen Sheldon and second degree murder in connection with the deaths of James Ferris and Jerry D. Howell.[1]

At issue in this appeal is the trial court's granting of Berdella's motion for summary judgment.[2] The motion asserted that the plaintiffs did not file their wrongful death actions, Counts I and II of the four-count petition, within the three-year limitation of

---

1. The criminal actions were *State v. Berdella,* Nos. CR88–4273, CR88–6148, and CR88–6151, in the Circuit Court of Jackson County, Missouri. The death of a fourth victim, Todd Stoops, is not involved in this action.

2. The motion was jointly filed by Berdella and his court-appointed trustee. Pursuant to § 460.-010, RSMo 1986 (repealed in 1990), the trial court appointed Frank Murphy, Jackson County's public administrator, to serve as trustee on March 22, 1989. Missouri courts have concluded that the General Assembly's repeal of § 460.-010 does not affect a court's ability to appoint a trustee or the trustee's duty to continue serving. *Berdella v. Pender,* 821 S.W.2d 846 (Mo. banc 1991).

§ 537.100.[3] The trial court also granted summary judgment in favor of Berdella on Counts III and IV. In these counts, the personal representatives of the victims' estates sought damages for intentional and negligent torts inflicted on the victims prior to their deaths pursuant to § 537.020. In this appeal, the plaintiffs do not contest the court's granting summary judgment in favor of Berdella on Count III. They do challenge the trial court's granting summary judgment to Berdella on Count IV, and they challenge the trial court's refusal to sanction Berdella for not answering the plaintiffs' questions during three depositions.

The plaintiffs filed their wrongful death action on May 10, 1989. In deciding that Counts I and II, the wrongful death counts, were precluded by § 537.100 because the plaintiffs filed their petition more than three years after the victims' deaths, the trial court relied solely on the dates of death set by Berdella. Berdella pleaded guilty to murdering the victims, and at the plea hearing, he testified that Jerry Howell died on July 6, 1984; Robert Allen Sheldon, on April 14, 1985; and James Ferris, on September 27, 1985. He reaffirmed those dates in his answers to plaintiffs' interrogatories and in an affidavit filed in support of the motion for summary judgment.

After Berdella filed his motion, the plaintiffs tried three times to take Berdella's deposition at the state penitentiary where Berdella was an inmate. It was to be a joint deposition for four cases involving the same facts.[4] Berdella refused to answer any question except for one asking him his name, and he refused to answer even that one at the first deposition.

At the first deposition on April 26, 1990, Berdella refused to answer any question. His reason was that he was not represented by an attorney, but Charles E. Atwell, who had been retained by Berdella's insurer to represent Berdella and who had filed all responsive pleadings for Berdella and Murphy, was present. Atwell did announce that he did not represent Berdella in the *Economy Fire*[5] case and that Berdella was not represented by an attorney in that case. Atwell would later file the motion for summary judgment which is the subject of this appeal.

On June 12, 1990, the plaintiffs tried again to take Berdella's deposition. Berdella appeared along with Atwell, but Berdella again refused to answer any question except for one asking his name. He stated, "It is my position that I am going to refrain from any deposition prior to having psychiatric evaluation and setting up proper psychiatric and medical supervision to allow this deposition to go on properly, and have asked Charles Atwell to file a Writ of Mandamus to have this take place." Atwell actively participated in that deposition as Berdella's attorney and counseled on several matters throughout the proceeding.

On October 9, 1990, the plaintiffs asked the trial court to strike Berdella's pleadings in this case because of his refusal to give a deposition statement. On October 19, 1990, the trial court granted the plaintiffs additional time to commence more discovery. In that order, the court stated:

It should be noted that this court has previously ordered sanctions against Defendant Berdella for his failure to abide by discovery orders entered by this court.[6] Defendant Berdella and his

3. All statutory references are to the 1986 Missouri Revised Statutes.

4. The other three cases, all pending in Jackson County circuit court, were: *Economy Fire and Casualty Company v. Betty Ann Haste, et al.,* No. CV89–14300, a declaratory judgment action by Berdella's insurer to determine its liability and to which the plaintiffs in the instant case were defendants; *Betty Ann Haste, et al. v. Robert Berdella and Frank Murphy,* No. CV89–7118, a wrongful death action for the death of Todd Stoops; and *Christopher Bryson v. Robert Berdella and Frank Murphy,* No. CV88–29889, a

civil suit, but not a wrongful death action, arising out of the same facts. The Economy Fire case was appealed to this court, and our opinion is recorded at 824 S.W.2d 41 (Mo.App.1991).

5. See note 4, supra.

6. We assume the court was referring to an order it had issued in the Economy Fire case. After the deposition, on May 21, 1990, the plaintiffs had filed a motion, bearing only the Economy Fire case caption, asking the trial court to sanction Berdella for refusing to give his deposition.

counsel are hereby informed that, if further sanctions arise, it will be a relevant consideration of this court upon the timely ruling on all the motions stated herein.

At a third deposition on March 22, 1991, penitentiary personnel informed the plaintiffs' attorney that Berdella refused to leave his prison cell for the deposition. Berdella had written attorneys a few days before the deposition informing them that he would refuse to appear.

On May 21, 1991, the trial court entered an order refusing to sanction Berdella because the plaintiffs had not moved for an order to compel Berdella to answer. The court further reasoned:

> Assuming that an order to compel is granted and the witness continues to refuse to testify, it would appear that the court would be authorized, upon a finding of lack of good cause for the refusal, to impose monetary sanctions upon the witness for the expenses incurred in securing the motion. If the witness is not a party, it is doubtful whether or not the court is empowered to strike pleadings unless the court found that a party to the action advised the witness not to testify.

> In this case, in view of the provisions of Chapter 460 RSMo. and the case law interpreting the provisions of those statutes, it is not at all clear that Robert Berdella is a "party" to this action inasmuch as he is represented by his court appointed trustee.

We conclude that the three-year statute of limitations did not bar the plaintiffs' claim. We also conclude that Berdella was a party to the action and that the trial court should not have considered Berdella's motion for summary judgment because of his contumacious refusal to give deposition testimony.

## Statute of Limitations

■ The trial court concluded that the plaintiffs' action was barred by the three-

year limitation of § 537.100 because Berdella set the deaths at more than three years before the plaintiffs filed their petition. The court concluded, consistent with caselaw,[7] that a wrongful death action accrues at the moment a victim dies.

Berdella was the only source for the dates on which the trial court relied. Precluded from testing those dates in a deposition of Berdella, the plaintiffs presented Sheldon's death certificate which reported his date of death to be April 2, 1988, the date authorities found parts of his body, and a presumptive certificate of death issued on December 21, 1988, by the circuit court of Jackson County setting Ferris' date of death as September 27, 1985. They presented evidence that the Sheldons did not know of Sheldon's death until parts of his body were found and that the Howells did not know that Jerry Howell was dead until Berdella testified at his guilty plea on December 19, 1988, to killing him. The plaintiffs also asserted that Bonnie Ferris also assumed her husband to be alive, though missing, until Berdella's guilty plea, but they presented no competent evidence to support that allegation.

Although the court acknowledged the virtual impossibility for the plaintiffs' ascertaining that the victims were dead—not just missing—before the three years expired, the court relied on *Frazee v. Partney*, 314 S.W.2d 915 (Mo.1958), to conclude that § 537.100 must be strictly construed. The trial court concluded that a strict construction of § 537.100 precluded any tolling of the three-year limitation or a delayed accrual even though Berdella's misdeeds provided a means of escaping liability.

*Frazee* represents a long line of decisions by the Supreme Court of Missouri in which the court concluded that the limitation in the wrongful death statute was a condition imposed on the right itself. This has been the interpretation of a majority of jurisdictions. Annotation, *Exceptions Attaching to Limitation Prescribed by Death Stat-*

---

The court granted the motion and imposed monetary sanctions against Berdella. That is the only order imposing sanctions we can find in either the record of this case or the Economy Fire case.

7. *Deming v. Williams*, 321 S.W.2d 720 (Mo.App. 1959); *Dzur v. Gaertner*, 657 S.W.2d 35 (Mo. App.1983).

*utes or Survival Statutes Allowing Recovery of Damages for Death,* 132 A.L.R. 292 (1941). This interpretation, however, can defeat the very purpose of the wrongful death action. One commentator stated:

> [B]y unlawful concealment, a wrongdoer is able to defeat the cause of action which otherwise the representatives were intended to have. In other areas of the law, unlawful concealment is recognized as tolling the statutory period. However, since no such tolling provision seems to be applicable to the death act, the wrongdoer escapes civil liability. This may be a possible interpretation of the statute but it is shocking to the conscience.

John D. Rahoy, Recent Cases, 24 Mo. L.Rev. 397, 399 (1959) (footnote omitted).

In 1983, the Supreme Court of Missouri announced a major shift in its interpretation of Missouri's wrongful death statute. In *O'Grady v. Brown,* 654 S.W.2d 904 (Mo. banc 1983), the court announced that the wrongful death statute should not be so strictly construed as to avoid the wrongful death statute's purposes. The court stated:

> Respondents assert that this statute must be "strictly construed" because it is "in derogation of the common law." We do not agree. The wrongful death statute is not, strictly speaking, in "derogation" of the common law. Derogation is defined as "[t]he partial abrogation or repeal of a law, contract, treaty, legal right, etc." or as a "lessening, weakening, curtailment, ... impairment," detraction or taking away of a power or authority. 3 Oxford English Dictionary 232 (1933). Wrongful death acts do not take away any common law right; they were designed to mend the fabric of the common law, not to weaken it. Remedial acts are not strictly construed although they do change a rule of the common law. *Steggal v. Morris,* 363 Mo. 1224, 258 S.W.2d 577, 582 (1953). *We must therefore apply the statutory language "with a view to promoting the apparent object of the legislative enactment." United Airlines v. State Tax Commis-*

*sion of Missouri,* 377 S.W.2d 444, 451 (Mo. banc 1964).

*Id.* at 907–08 (footnote omitted) (emphasis added). The *O'Grady* court approved the conclusion of Justice Harlan in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 390–91, 90 S.Ct. 1772, 1782, 26 L.Ed.2d 339 (1970):

> [L]egislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law.

The *O'Grady* court concluded in that case that a wrongful death did lie against a person causing the death of an unborn child because it was consistent with the legislature's purposes in enacting a wrongful death statute. The court emphasized the reasoning of Justice Cardozo in *Van Beeck v. Sabine Towing Company,* 300 U.S. 342, 350–51, 57 S.Ct. 452, 456, 81 L.Ed. 685 (1937): "It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied [by a wrongful death statute]." *O'Grady,* 654 S.W.2d at 909. The *O'Grady* court asserted a three-fold purpose to Missouri's wrongful death statute: "[T]o provide compensation to bereaved plaintiffs for their loss, to ensure that tortfeasors pay the consequences of their actions, and generally to deter harmful conduct which might lead to death." *Id.*

Hence, we conclude that the reasoning of *Frazee* is superseded by *O'Grady.* Moreover, the *Frazee* court stated emphatically, "We are not concerned here with any question of the *existence* of either a cause of action, or of parties plaintiff, or of a party defendant; this case presents merely an inability to discover the identity of the defendant." 314 S.W.2d at 921 (emphasis in original). In this case, we are concerned with the question of the existence of a cause of action. We conclude, therefore, that *Frazee* and any other case in which

death could not be ascertained do not provide guidance for this case.

Clearly, granting Berdella's motion for summary judgment was contrary to all three purposes recognized in *O'Grady*. Contrary to ensuring that tortfeasors pay for their misdeeds, granting Berdella's motion suggests that any tortfeasor can escape all civil liability merely by concealing his evil deeds for three years.

The victims' families had no choice but to wait before asserting this action. The law will not permit a missing person to be presumed dead until he or she has been missing for at least five years. Section 490.620. They could not have asserted any action within that five year period until they had facts to overcome the law's presumption of life.

We find persuasive the reasoning of a California appellate court in considering whether California's one-year statute of limitations on a wrongful death action could be tolled by fraudulent concealment. The court stated:

> Statutes of limitations are intended to prevent fraud, to keep parties from asserting rights after a lapse of time has destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished if they ever did exist. To hold that by concealing fraud, or by committing fraud in such a manner as to conceal it until after the party committing the fraud could plead the statute of limitations to protect itself, is to make fraud the means by which it is successful and secure.

*Baker v. Beech Aircraft Corp.*, 39 Cal. App.3d 315, 114 Cal.Rptr. 171, 177 (1974) (citing *Waugh v. Guthrie Gas, Light, Fuel & Improvement Company*, 37 Okl. 239, 131 P. 174 (1913)). *Cf. Frabutt v. New York, C. & S. L. R. Co.*, 84 F.Supp. 460 (D.C.Pa.1949) (construing the Federal Employees Labor Act); *McLaughlin v. Blake*, 120 Vt. 174, 136 A.2d 492 (1957); *MacKeen v. Kasinskas*, 333 Mass. 695, 132 N.E.2d 732 (1956).

Given Berdella's concealment of the bodies and the law's presumption that the victims were only missing, not dead, we conclude that the limitation set forth in § 537.-100 was tolled until the plaintiffs could, by reasonable diligence, ascertain that they had an action. For the Sheldons, that occurred on April 2, 1988, when authorities found parts of his body. For the others, this occurred on December 19, 1988, when Berdella pleaded guilty to murdering the victims. Hence, the plaintiffs' actions for wrongful death were not barred by § 537.-100.

## Sanctions

■ We conclude that the trial court abused its discretion in even considering Berdella's motion for summary judgment. Berdella's motion was based on facts known only to him, yet he refused—even in defiance of the trial court's orders—to submit to the plaintiffs' deposition. Depriving the plaintiffs of a meaningful opportunity to confront Berdella's evidence was a violation of the due process clause of Mo. Const. art. I § 10 (1945). It rewarded Berdella's defiance. We conclude, therefore, that the trial court should have refused to consider any affirmative defenses, including the statute of limitations, raised by Berdella.

The trial court discerned three reasons why it should not apply any sanctions in this case: (1) The plaintiffs had not asked the court to compel Berdella to give his deposition; (2) Berdella was not a party to the action—Murphy, Berdella's trustee, was the party—and so Berdella could not be sanctioned; and (3) the plaintiffs would not have gained anything from taking Berdella's deposition, so there was no justification for sanctioning him. We disagree.

The trial court cited Rule 61.01(g) in concluding that the plaintiffs could not obtain sanctions against Berdella because they had not filed a motion to compel Berdella's testimony. Rule 61.01(g) concerns a witness' refusal to answer deposition questions. Berdella was more than a witness; he was a party.

In concluding that Berdella was not a party, the trial court reasoned that because the court had appointed Murphy as trustee of Berdella's property while Berdella was

incarcerated, Murphy was the party, not Berdella. Berdella, however, entered a joint appearance with Murphy in answering the original petition and the amended petition. He jointly filed the motion for summary judgment. He was a named defendant. His interest in the outcome was sufficient that he raised both an affirmative defense and moved for the summary judgment. His property was at stake; his actions were at issue. A party is an individual "bound by the proceedings, or an interested litigant, or a person whose name is designated on the record as plaintiff or defendant." *Munson v. Director of Revenue*, 783 S.W.2d 912, 915 (Mo. banc 1990). Berdella was a party.

Murphy's role was conservator of Berdella's property "to protect creditors, and other 'interested persons,' from the potential squandering of [Berdella's] estate while [Berdella] was incarcerated." *Berdella v. Pender*, 821 S.W.2d 846, 850 (Mo. banc 1991). Murphy was a necessary party to this action, not because Berdella was civilly dead, *American Family Mutual Insurance Company v. Mason*, 702 S.W.2d 848 (Mo.App.1985), but because Murphy held legal title to Berdella's property.

The appropriate rule for the trial court to consider, therefore, was 61.01(f) which states:

> If a party ... fails to appear before the officer who is to take his deposition, after being served with notice, the court may, upon motion and reasonable notice to the other parties and all persons affected thereby, make such orders in regard to the failure as are just and among others, it may take any action authorized under paragraphs (1), (2), (3) and (4) of subdivision (d) of this Rule.

Rule 61.01(d) authorizes the court, without a motion to compel, to prohibit a party from opposing "designated claims or defenses or prohibit him from introducing designated matters in evidence" or to strike "pleadings or parts thereof" or to render a "judgment by default against the disobedient party."

At each deposition, Berdella complained that he had not received notice. Notice to Berdella's attorney was sufficient. Although Atwell noted for the record at the first and second deposition that Berdella had not received personal notice and was not represented in the *Economy Fire* case, Atwell did receive notice in this case and did represent Berdella. Berdella does not have a legitimate complaint. The same was true at the second deposition. Atwell withdrew before the third deposition, but the record establishes that Berdella had personal notice of the proceeding and an attorney appeared to represent him. Berdella had no legitimate reason to refuse to give his deposition. As a party, the trial court should have sanctioned him.

The trial court further reasoned that even if Berdella were a party, it should not sanction him because the plaintiffs would not have gained anything by deposing Berdella. The trial court stated:

> [I]f Berdella had testified on deposition as to the victims' dates of death, one of two situations would have occurred: (1) Berdella could have testified that the victims died on the dates he testified to on his guilty plea or, (2) he could have testified to different dates. If he testified to different dates, there is no assurance that such dates of death would have fallen within the three year limitation period. However, if he did testify to dates which fell within the three year limitations period, he would be confronted with his testimony on his guilty plea, his affidavit and his answer to interrogatories[,] and a credibility issue would arise as to which testimony was correct. To pursue "what might have been" would be pure speculation.

Although this is true, no one can know what the plaintiffs would have discovered had they been given an opportunity to depose Berdella. They may have discovered that Berdella had arbitrarily picked the dates. Even if his providing different dates than the ones he had previously given had resulted in "a credibility issue ... as to which testimony was correct," the trial court would have been obligated to deny the motion for summary judgment

because the plaintiffs would have demonstrated a genuine issue of material fact.

### Estates' Action for Negligence

The plaintiffs devote two points of their brief to the trial court's granting summary judgment in favor of Berdella on Count IV, but their argument in both misses the point of the trial court's conclusion. The trial court granted summary judgment because the plaintiffs held themselves out in the counts as personal representatives of the victims' estates without having obtained letters testamentary or letters of administration from probate court, and they were beyond the three-year limit for obtaining them. The trial court concluded that the plaintiffs did not have standing to sue as the estates' personal representatives.

We agree. By not taking steps to become personal representatives of the victims' estates within the three-year limit of § 473.070, or even during the three years after the plaintiffs ascertained that Berdella had killed the victims, the plaintiffs lost standing to assert an action as representatives of the estates.

### Conclusion

We, therefore, reverse the trial court's granting of summary judgment in favor of Berdella on Counts I and II of the plaintiffs' petition. The plaintiffs concede that the trial court properly ruled in favor of Berdella on Count III, and we affirm the trial court's granting of summary judgment in favor of Berdella on Count IV. We remand the case to the trial court for trial on the issues raised in Counts I and II.

All concur.